Priscilla GRAY, Plaintiff in Error,

v.

Janie STEPHENS, Defendant in Error.

No. 36529.

Supreme Court of Oklahoma.

Nov. 8, 1955.

Ritter & Collins, Marvin Shilling, Ardmore, for plaintiff in error.

Ernest W. Tate, George & George, Ardmore, for defendant in error.

HUNT, Justice.

This is an appeal from the District Court of Carter County. Priscilla Gray originally instituted the action against Janie Stephens and Lela Clark alleging that said defendants were about to breach a contract made by defendant Janie Stephens with plaintiff whereby said defendant agreed to convey

to plaintiff certain described real property in consideration of the efforts of plaintiff to dispossess defendant Lela Clark of same, and praying an injunction. Thereafter defendant Janie Stephens filed answer and cross petition in which she denied making a contract for a deed, alleged that she had executed a deed to said property to plaintiff but that same was obtained by fraud, undue influence, and misrepresentation and prayed cancellation of the deed and that her title be quieted. Plaintiff thereupon filed pleading alleging an oral contract for deed, that the deed was executed on consideration of plaintiff's agreement to care for defendant the rest of her life, asserting validity of the deed and asking that her title be quieted. The case went to trial on the issue as to whether there was such fraud and misrepresentation in the procurement of the deed as to vitiate same.

Plaintiff at the time of trial was 71 years of age, and although she could read and write her education was very meager. Defendant was born in slavery and, as best she could figure, was more than 100 years of age. She could neither read nor write and was very infirm and feeble. The evidence of both parties is very vague, confusing, and self-contradictory. As best we can figure out, the chain of events was approximately this:

Defendant Janie Stephens and her husband had bought the house and lot here in question during the lifetime of the husband and had lived in it as their home. At the time of his death she was very ill; over Janie's objections one Lela Clark and her husband moved in with Janie ostensibly to take care of her. Janie's husband had also owned a barber shop, which Janie continued renting and from which she derived a small income. She also rented a room of her home to the mother and step-father of said Lela Clark, which provided her additional income. She gave Lela Clark money to pay her doctor and other bills, because she was too infirm to attend to these matters, but seemingly she continued to resent the presence of Lela Clark in her home. Among other things, she accused Lela Clark of taking the deeds to her home and refusing to return them, and she seemed to have an obsession that it was necessary for her to retain possession of said deeds in order to retain title to her home. About the middle of September, 1947, plaintiff, Priscilla Gray, who had once been married to Janie's brother and who, it seemed, claimed to be a preacher, came through Ardmore on her way to Texas and stopped off to visit Janie. Janie confided to Priscilla her desire to evict Lela Clark, also her desire to have a deed to her place, and wanted Priscilla to stay with her, take care of her until she died, saying that she wanted Priscilla to have the place when she died as Priscilla was the nearest person to a relative she had left. It seems that Priscilla more or less agreed to take care of Janie. A few days later Janie made a will in favor of Priscilla, which will was turned over to Priscilla. At whose suggestion it does not clearly appear, but on October 3, 1947, Priscilla and Janie, along with two other witnesses, went to a lawyer's office where Janie executed a warranty deed to the property to Priscilla. This deed was recorded and returned to the lawyer. Priscilla admits that she gave no consideration of any kind for this deed. Also, it seems Priscilla was trying to sell the property, against Janie's wishes. As best it can be gathered from the very rambling and incoherent account of Janie about the transaction, Janie thought she was accomplishing two things: she was getting a "deed" to her place, which would take the place of her lost deeds and clear her title to her property, and because of her feeble health she was giving Priscilla authority to take steps to oust Lela Clark from the property. Priscilla immediately took steps to accomplish this end. She employed the same attorney who had drawn the deed to file forcible entry and detainer proceedings against Lela Clark in justice of the peace court. Later Janie joined in the action. This cause finally wended its way to this court, where it was reversed on technical grounds, with the net result that Lela Clark remained in the house. Clark v. Gray, 204 Okl. 221, 228 P.2d 654. On March 22, 1949, Priscilla and Janie had this same attorney draw up a contract which recited no consideration and no obligation on the part of Priscilla but gave Janie the right to live

in the property here involved rent free for the rest of her life. This instrument, as was the warranty deed executed earlier, was signed by Janie by mark in the presence of witnesses and was recorded. Thereafter, on November 8, 1952, the same attorney began this action on behalf of Priscilla against Janie and Lela Clark to enjoin them from breaching the contract to give a deed to the property, as above outlined. During the pendency of the suit this attorney died; upon new attorneys being employed, the issues became changed to an action to cancel the warranty deed. At no time did Janie relinquish control of the property and all parties treated the property as belonging to her; she testified she paid all bills for the upkeep thereof, which was not denied by plaintiff. At the time of trial Priscilla admitted she had left Janie's house some three months before and was living with other people not concerned with this litigation.

The trial judge found that at no time had Janie intended to divest herself of title or control of her property by reason of the warranty deed executed by her; that by executing this deed she thought she was clearing her own title; and cancelled and held for naught any muniment of title flowing from Janie Stephens to any other party involved in the case as having been obtained by fraud, mistake, misrepresentation, or overreaching, and entered judgment accordingly. From order overruling motion for new trial Priscilla has perfected this appeal.

Plaintiff contends that where cancellation of written instruments is sought on the ground of fraud the evidence thereof must be clear and satisfactory and of such weight and cogency as to establish satisfactorily the wrongful conduct charged; that the evidence here adduced on the point does not meet this standard and therefore the court erred, citing numerous cases in support of the rule. Undoubtedly this rule of law is correct as an abstract proposition, but a modification of that rule is applicable under the circumstances presented here. As stated in White v. Morrow, 187 Okl. 72, 100 P.2d 872, and numerous cases therein cited,

where, as here, a confidential or fiduciary relationship exists between the parties, inadequacy of consideration is shown, and the circumstances surrounding the transaction suggest fraud, mistake, duress, or undue influence, a presumption of fraud arises which must be overcome by the person asserting the validity of the written instrument in question. Certainly the great weight of the evidence, both on the part of Priscilla and Janie, shows that Janie thought she was clearing her own title by giving this deed to Priscilla and had no intention of divesting herself of title thereto or control thereof. The circumstances also show that Priscilla arrived at an opportune time, when Janie and Lela Clark were quarrelling, and immediately took advantage of the situation; the testimony shows that Janie had not seen or heard from Priscilla for some 14 or 15 years "until I see her walking in the door"; that within less than two weeks she had exercised such influence over Janie that Janie first made a will in her favor, then executed the warranty deed here in question. It is admitted that no money consideration passed for the deed, and there is no evidence as to the kind, character, or extent of services, if any, which Priscilla rendered Janie so as to make a consideration for the deed or that Janie agreed to deed her the place for such consideration; Janie's intention on that point seemed to be that she wanted Priscilla to take care of her and if Priscilla did so Janie would leave the property to her at her death; that she had no present intention to convey the property by the deed executed by her. See also Haggerty v. Key, 100 Okl. 238, 229 P. 548.

In a case of equitable cognizance this court will affirm the trial court unless the judgment is clearly against the weight of the evidence. French v. Leachman, Okl., 258 P.2d 1204.

Affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, HALLEY, and BLACKBIRD, JJ., concur.